IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

In the Matter of:

KEVIN SWENBY,

            Debtor.

(Chapter 7)

Case No. 13-15958

KENDALL SWENBY and
THE ESTATE OF OPAL MEICHER,

            Plaintiffs,
v.

KEVIN SWENBY,

            Defendant.

Adv. No. 14-00048

MEMORANDUM DECISION

    This case starts with two state court judgments. On July 31, 2007, plaintiff Kendall Swenby obtained a judgment against his brother, defendant and debtor Kevin Swenby, in the amount of $32,813.80 for unjust enrichment. Kendall alleged Kevin borrowed money from him, refused to repay him, and characterized the borrowed money as a gift in a mortgage application. More than two years later, Kendall, as the personal representative of the Estate of Opal Meicher (their mother), obtained another judgment against Kevin in the amount of $88,000.00 based on breach of fiduciary duty and wrongful conversion. The estate alleged Kevin induced his mother to sign checks to him by concealing his intended use for the funds.

    After Kevin filed this bankruptcy case in 2013, Kendall initiated an adversary proceeding to find the state court judgments non-dischargeable under 11 U.S.C. § 523(a)(2), (4), (6) or deny

1

discharge under § 727(a)(3). Prior to trial, I denied summary judgment because the state court rulings did not sufficiently state the found facts to preclude this court from hearing the case. Despite this ruling, Kendall argued that, contrary to my express recommendation, he did not need to present any testimony at trial because the court could use the doctrine of collateral estoppel to find the debt non-dischargeable. I dismissed the complaint, finding Kendall failed to meet his burden of proof on all of his claims.

Kevin then filed a motion for attorney fees and costs as provided under 11 U.S.C. § 523(d) and Federal Rule of Bankruptcy Procedure 7054(b). He argued the legal and factual positions taken by Kendall were not substantially justified and caused him considerable costs. Kendall objects to the award of attorney fees.

Under 11 U.S.C. § 523(d)

> If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

11 U.S.C. § 523(d). Essentially, to obtain an award of attorney fees, a debtor must establish three things: "(1) the creditor requested a determination of the dischargeability of the debtor under section 523(a)(2); (2) the debt is a consumer debt; (3) and the debt was discharged." *In re Harvey*, 172 B.R. 314, 317 (B.A.P 9th Cir. 1994). Once a debtor proves these three elements, the burden shifts to the creditor to demonstrate its position was substantially justified or that special circumstances exist which would make an award unjust. *Id.* Kendall argues the debt was not a consumer debt and even if it was, his position was substantially justified.

I.    *Consumer Debts*

"The Bankruptcy Code's definition of consumer debt is adapted from the definition used in various consumer protection laws. H.Rep. No. 95–595, 95th Cong. 1st Sess. 309 (1977); S.Rep. No. 95–989, 2nd Sess. 22 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5808." *In re Stine*, 254 B.R. 244, 249 (B.A.P. 9th Cir. 2000) aff'd, 19 F.App'x 626 (9th Cir. 2001). The code defines a consumer debt as a "debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). Housing-related debts are generally classified as consumer debts. See *In re Burse*, 120 B.R. 833, 838 (Bankr. E.D. Va. 1990)(rent for debtor's primary residence was a consumer debt); *In re Jeffares*, 119 B.R. 872, 874 (Bankr. M.D. Fla. 1990)(funds obtained to pay utility bills, mortgage payments, purchase food, lodging and other miscellaneous items of a consumer nature were consumer debt); *In re Stine*, 254 B.R. at 250(debt to install a heating unit, make mortgage payments, and pay property insurance and taxes is consumer debt); *In re Stoltz*, 286 B.R. 283, 287 (Bankr. D. Vt. 2001)(a debt for an individual's unpaid residential property rent is a consumer debt).

Kevin argues the transfers at issue in the state court proceedings were for the purchase and improvement of his house which made the judgments consumer debts. Kendall, however, claims the transfers were real estate loans. "Two schools of thought have evolved on how to treat debt … which is secured by real property. One group holds that the determinative factor is the 'purpose of the debt,' see *In re Kelly*, 841 F.2d 908, 913 (9th Cir.1988), the other holds that any debt secured by real property is *per se* not consumer debt, see *In re Randolph*, 28 B.R. 811, 813 (Bankr.E.D.Va.1983)." *Guar. Sav. & Loan Ass'n v. Lowe*, 109 B.R. 698, 699 (W.D. Va. 1990). *In re Johnson*, 115 B.R. 159, 161-62 (Bankr. S.D. Ill. 1990), explains the rationale of the two camps:

3

> The legislative history indicates that debts secured by real property were not intended to be classified as consumer debts. *See* 4 *Collier on Bankruptcy,* ¶ 707.06 at 707–17 (15th ed. 1990). Thus, some courts have adopted the position that home mortgages are not consumer debts. *See, e.g., In re Ikeda,* 37 B.R. 193, 194–95 (Bankr.D.Haw.1984); *In re Nenninger,* 32 B.R. 624, 626 (Bankr.W.D.Wis.1983); *In re Randolph,* 28 B.R. 811, 813 (Bankr.E.D.Va.1983). Other courts have refused to follow the legislative history in light of the clear and unambiguous definition of consumer debt found in section 101(7). *See, e.g., Matter of Booth,* 858 F.2d 1051, 1054–55 (5th Cir.1988); *In re Kelly,* 841 F.2d at 912; *In re Walton,* 69 B.R. 150, 153–54 n. 4 (E.D.Mo.1986), *aff'd,* 866 F.2d 981 (8th Cir.1989); *In re Wegner,* 91 B.R. 854, 857 (Bankr.D.Minn.1988). "This approach recognizes that the legislative history is not part of the statute and that if Congress intended to exclude home mortgages it could have said so in the definition of consumer debt." 4 *Collier on Bankruptcy,* ¶ 707.06 at 707–18.

Previously, in *Matter of Nenniger,* this court found a real estate mortgage is not a consumer debt.

> Debtors rely on *In Re Burgess,* 22 B.R. 771, 9 B.C.D. 646 (Bkrtcy.M.D.Tenn.1982) where Judge Paine ruled that a debt incurred to purchase property to be used as debtors' home was a "consumer debt," within the meaning of 11 U.S.C. §§ 101(7), 523(d). In *Burgess,* the debt was unsecured. The court specifically noted the legislative history of 11 U.S.C. § 101(7), which makes clear that a consumer debt does not include a debt to any extent the debt is secured by real property. 22 B.R. at 772, citing 124 Cong.Rec.H. 11,090 (Sept. 28, 1978) (remarks of Rep. Edwards). From the remarks cited above and further analysis of the legislative history of 11 U.S.C. § 101(7) the court concluded that an unsecured obligation for the purchase of a home could be a consumer debt. *Burgess,* however, is of no help to debtors in the present case, since the entire debt to the plaintiff was secured by a recordable interest in real property. The assignment of proceeds from sale of the Illinois home, which was eventually recorded by the plaintiff in the office which maintains land records in Illinois is tantamount to a mortgage.

*Matter of Nenninger*, 32 B.R. 624, 625-26 (Bankr. W.D. Wis. 1983). In this case, neither Kendall, nor his mother, obtained a consensual lien on Kevin's real property. The loans were unsecured. Therefore, *Nenninger's* holding on real estate mortgages is inapplicable to this case.

4

Although the transfers underlying the state court judgments may have been housing-related, they are unsecured and fall well within the definition of consumer debts.

    *II.    Substantially justified standard*

"The language of section 523(d) is drawn from the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A) (see S. Rep. No. 65, 98th Cong., 1st Sess. 9-10 (1983)), which governs claims for attorney's fees by litigants against the federal government." *In re Hingson*, 954 F.2d 428, 429 (7th Cir. 1992). "Because the standard for a fee award under § 523(d) is the same as the EAJA standard and was modeled on it ... § 523(d) should be interpreted in the same way." *First Card v. Hunt* (In re Hunt), 238 F.3d 1098, 1103 (9th Cir. 2001)(citations omitted). The Supreme Court discussed the "substantially justified" standard in *Pierce v. Underwood*, 487 U.S. 552, 566 (1988). "In Pierce, the Supreme Court interpreted the 'substantially justified' standard in the EAJA as requiring that a claim have a reasonable basis both in law and in fact. Expanding on the 'reasonable basis both in law and fact' standard, this court considers three factors: '[1] whether the action had a reasonable basis in truth for the facts alleged, [2] a reasonable basis in law for the theory propounded, and [3] a reasonable support in the facts alleged for the legal theory advanced.'" *Rice v. Sasse* (In re Sasse), 438 B.R. 631, 651 (Bankr. W.D. Wis. 2010). Furthermore, a plaintiff must be substantially justified throughout the litigation. See *Discover Bank v. Warren* (In re Warren), 507 B.R. 862, 882 (Bankr. D.S.C. 2013)("Moreover, 'a position can be justified even though it is not correct, and . . . can be substantially (i.e., for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact.' With respect to the point in time in a litigation at which a plaintiff's position must be substantially justified, a plaintiff 'must be substantially justified at all times through trial to be

5

insulated from paying attorneys' fees under § 523(d),' not only at the time the complaint is filed.")(citations omitted).

In this case, the underlying state court judgments found Kevin was unjustly enriched, breached a fiduciary duty, and wrongfully converted funds from his mother. It is certainly not a long reach to think Kendall might have had a cause of action under § 523(a). However, as this court's memorandum decision reflects, Kendall completely failed to meet his burden of proof when he chose to rely on transcripts of testimony and collateral estoppel.[1]

Plaintiffs in dischargeability cases have a continuing burden to maintain a substantially justified position at all times throughout the trial. *Id. In re Williams* provides a summary of case law on this temporal aspect:

> We hold that the creditor must be substantially justified at all times through trial to be insulated from paying attorneys' fees under § 523(d). *See (In re Carolan)*, 204 B.R. 980 (9th Cir. BAP 1996); *In re Harvey*, 172 B.R. at 318–19; *First Deposit Nat'l Bank v. Mack (In re Mack )*, 219 B.R. 311, 314 (Bankr.N.D.Fla.1998) (where a "creditor pursues or continues to pursue a claim after it knows or should have known it could not prevail, there is no reasonable basis" and thus, it cannot be substantially justified); *Providian Bank v. Stockard (In re Stockard)*, 216 B.R. 237, 240 (Bankr.M.D.Tenn.1997) ("[a] creditor's position is substantially justified if it has a 'reasonable basis in both law and in fact' at all times during the litigation."); *People's Bank v. Poirier (In re Poirier)*, 214 B.R. 53, 57 (Bankr.D.Conn.1997); *Mercantile Bank of Illinois v. Williamson (In re Williamson)*, 181 B.R. 403 408 (Bankr.W.D.Mo.1995); *In re Friend*, 156 B.R. 257, 262 (Bankr.W.D.Mo.1993); *In re Shurbier,* 134 B.R. 922, 928 (Bankr.W.D.Mo.1991); *Manufacturers Hanover Trust Co. v. Hudgins,* 72 B.R. 214, 220–21 (N.D.Ill.1987) ("when a creditor learns that it will not be able to prove its case, but continues to pursue the case, it falls within the statute, and thus must pay the debtor's attorney's fees and costs").

---

[1] Neither the court, nor parties, has found any precedent addressing whether a complaint is substantially justified when the underlying facts and theory are plausible but the attorney's litigation strategies are completely unjustified. Thus, it appears this is an issue of first impression.

6

*In re Williams*, 224 B.R. 523, 530 (B.A.P. 2d Cir. 1998). One of the cited cases, *Manufacturers Hanover Trust Co. v. Hudgins*, 72 B.R. 214 (N.D. Ill. 1987), is particularly relevant. In it, "Manufacturers Hanover Trust knew or should have known, after taking [the debtors'] deposition, first that there was no evidence of fraud, and second, that in order to prove their other theories, [it] would have [had] to introduce the statements into evidence." *Id.* at 220. Thus, the court awarded attorney fees, reasoning:

> A creditor is not substantially justified when it proceeds to trial knowing that it lacks sufficient evidence to sustain its burden of proof and then fails to establish a single necessary element of its claim. *In re Van Buren,* 66 B.R. 422 (Bankr.S.D.Ohio 1986). A creditor is not justified in continuing to pursue a case once it learns that its position is not substantially justified, even if the suit was originally filed in good faith. Such a reading of the statute would all but emasculate the purpose of section 523(d). Creditors could always contend that they thought they had a good case when they filed. Thus, the consumer debtor would be forced to settle rather than fight it out. No, we think better the construction of 523(d) is that when a creditor learns that it will not be able to prove its case, but continues to pursue the case, it falls within the statute, and thus must pay the debtor's attorneys' fees and costs.

*Id.* at 220-21. The court in *Manufactures Hanover Trust* awarded attorney fees because the plaintiff should have known after the deposition that it could not sustain its burden at trial if it did not introduce the statements.

Arguably justified at the complaint and summary judgment stages of this case, Kendall's position was not justified at trial. After denial of summary judgment and examination of *Grogan v. Garner*,[2] Kendall should have recognized that he could not rest on a theory of collateral estoppel. My express warning at the beginning of the trial made that clear. Counsel for Kendall

---

[2] Kendall relied on *Grogan v. Garner*, 498 U.S. 279 (1991), for the proposition that a court could use a trial transcript, in the absence of a sufficient findings of facts, to preclude a party under the doctrine of collateral estoppel. As discussed in *Swenby v. Swenby* (In re Swenby), 2014 Bankr. LEXIS 5144 (Bankr. W.D. Wis. Dec. 22, 2014), Kendall misinterpreted *Grogan*. It was clear the bankruptcy court in the underlying case relied on a clear findings of fact and not the trial transcript.

7

should have known that his trial presentation which included arguing a previously denied collateral estoppel doctrine, reading sections of the state court transcript at the trial instead of presenting testimony (even though Kendall was present in court and presumably prepared to testify), and neglecting to obtain an agreement with opposing counsel to use the transcripts as agreed facts would fall short of meeting his burden of proof.

Even when a case is not substantially justified, § 523(d) gives discretion to deny a motion for fees "if special circumstances would make the award unjust." The Bankruptcy Appellate Panel for the Ninth Circuit denied costs when calculating the fees related to a frivolous argument would have been difficult and the result *de minimus*. *In re Beltran*, 182 B.R. 820, 827 (B.A.P. 9th Cir. 1995)(footnote 2: " Moreover, calculation of the portion of attorneys' fees and costs on appeal which concern only Mr. Beltran would appear to be difficult, and we expect that the amount would be *de minimis.* Therefore, under the facts of this case, the Beltrans' request for an award of fees and double costs on appeal is ORDERED DENIED."); but see *In re Hingson*, 954 F.2d 428, 429-30 (7th Cir. 1992)("It is true that section 523(d), like the Equal Access to Justice Act on which it is modeled, authorizes the denial of an award of attorney's fees on the ground of "special circumstances." But we do not view this authorization as a license to the bankruptcy judge to base decision on idiosyncratic notions of equity, fair dealing, or, in this case, family justice. The exception should be interpreted with reference to "*traditional* equitable principles")(citation omitted).

11 U.S.C. § 523(d) only applies to § 523(a)(2) claims. It was originally aimed at credit card companies bullying debtors with frivolous and expensive adversary proceedings. See 11 U.S.C. § 523(d)(Editor's and Revisor's Notes: "The purpose of the provision is to discourage creditors from initiating proceedings to obtaining a false financial statement exception to

8

discharge in the hope of obtaining a settlement from an honest debtor anxious to save attorney's fees. Such practices impair the debtor's fresh start and are contrary to the spirit of the bankruptcy laws. Senate Report 95-989"). It is clear Kendall's strongest arguments were under § 523(a)(4) and (a)(6) rather than (a)(2). The state court judgments in this case referenced a breach of fiduciary duty and willful and malicious injury in the form of conversion. It is highly unlikely that the allegations of Kevin's behavior would have met the requirements of (a)(2). Therefore, the amount of resources devoted to defending the § 523(a)(2) action were likely small and the related fees *de minimis* and hard to determine. Accordingly, awarding the entire amount requested would be unjust. The motion is denied. It may be so ordered.

Dated: April 23, 2015

ROBERT D. MARTIN
UNITED STATES BANKRUPTCY JUDGE